IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MARY JANIS GALLOWAY                                       PLAINTIFF

vs.                               Civil No. 6:09-cv-06042

MICHAEL J. ASTRUE                                       DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Mary Janis Galloway ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 4).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff protectively filed her SSI and DIB applications on December 21, 2005. (Tr. 10, 42-44).[2] In these applications, Plaintiff alleged an onset date of November 4, 2005. (Tr. 42). Plaintiff alleged she was disabled due to a number of different impairments, including the following: back

---

[1] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

[2] Only the documents related to Plaintiff's DIB application are included in the transcript. The SSI documents were "not available for inclusion" in the record.

1

problems (Tr. 102, 299), side pain (Tr. 300), depression (Tr. 303), anxiety (Tr. 303-304), an ankle injury (Tr. 102), and mood disorder. (Tr. 304).[3] These applications were initially denied on June 29, 2006 and were denied again on reconsideration on April 11, 2007. (Tr. 30-31). On June 1, 2007, Plaintiff requested an administrative hearing on her applications. (Tr. 34). This hearing request was granted, and a hearing on this matter was held on September 10, 2008 in Hot Springs, Arkansas. (Tr. 275-322). Plaintiff was present and was represented by counsel, Sherri McDonough, at this hearing. *See id.* Plaintiff and Vocational Expert ("VE") Dianne Smith testified at this hearing. *See id.* On the date of this hearing, Plaintiff was fifty-one (51) years old, which is defined as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d) (2008), and had completed the tenth grade in school. (Tr. 282).

On November 17, 2008, the ALJ entered an unfavorable decision denying Plaintiff's applications for SSI and DIB. (Tr. 10-16). In this decision, the ALJ determined Plaintiff met the disability insured status requirements as of November 4, 2005 and continued to meet them through December 31, 2005. (Tr. 15, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since November 4, 2005, her alleged onset date. (Tr. 15, Finding 2). The ALJ determined Plaintiff had the following severe impairments: history of left ankle fracture, anxiety disorder, and mood disorder. (Tr. 16, Finding 3). However, the ALJ also determined Plaintiff did not have an impairment or a combination of impairments listed in, or medically equal to one listed in, the Listing of Impairments in Appendix 1 to Subpart P of

---

[3] Plaintiff cites a number of other impairments in her briefing. (Doc. No. 10, Page 2). The ALJ, however, was only required to investigate the impairments raised in her applications (Tr. 102) and at the administrative hearing. (Tr. 275-322). *See Pena v. Chater,* 76 F.3d 906, 909 (8th Cir. 1996) (quoting *Brockman v. Sullivan,* 987 F.2d 1344,1348 (8th Cir. 1993) and holding that "the administrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'").

Regulations No. 4 ("Listings").  (Tr. 16, Finding 3).

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined her RFC. (Tr. 10-16).  First, the ALJ evaluated Plaintiff's subjective complaints pursuant to the requirements of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) and found her claimed limitations were not fully credible.  *See id.*  Second, the ALJ determined, based upon this review of Plaintiff's subjective complaints, the hearing testimony, and the evidence in the record, that Plaintiff retained the RFC to perform a reduced range of light exertional activity.  (Tr. 16, Finding 6).  The ALJ described this RFC to the VE as follows:

> Let's assume that we have an individual in the late 40s, early 50s.  This individual has a limited education, same work history as you [the VE] just described.  This individual however has some nonexertional mental limitations, but they should be able to perform work where interpersonal contact is routine but superficial.  The complexity of the task could be learned by experience and have several variables. The individual could use judgment with limits, and this hypothetical individual would require some supervision but only little supervision for routine tasks but detailed for nonroutine tasks.  This hypothetical individual also has some physical problems mainly related to orthopedic issues.  The individual should however be able to occasionally lift 20 pounds, frequently lift and carry 10 pounds. This individual should be able to stand and/or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, have unlimited ability to operate hand and foot controls.  And those are really the only physical limitations or restrictions.

(Tr. 318).

The ALJ evaluated Plaintiff's Past Relevant Work ("PRW").  (Tr. 15).  Plaintiff and the VE testified that Plaintiff's PRW included work as a cashier (light, semiskilled), airplane painter (light, semiskilled), and housekeeper (light, unskilled).  (Tr. 15, 275-322).  The ALJ found that, given Plaintiff's RFC and other limitations, Plaintiff retained the ability to perform all of her PRW.  (Tr. 16, Finding 7).  Based upon this finding, the ALJ determined Plaintiff was not disabled, as defined by the Act, at any time from November 4, 2005 through November 17, 2008.  (Tr. 16).

Thereafter, Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 6). *See* 20 C.F.R. § 404.968. On March 25, 2009, the Appeals Council declined to review the ALJ's unfavorable decision. (Tr. 3-5). On May 26, 2009, Plaintiff filed the present appeal. (Doc. No. 1). The parties consented to the jurisdiction of this Court on July 22, 2009. (Doc. No. 4). Both parties have filed appeal briefs. (Doc. Nos. 10-11). This case is now ready for decision.

## 2. Applicable Law:

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*,

160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the ALJ's decision is not supported by substantial evidence in the record. (Doc. No. 10). Specifically, Plaintiff claims the ALJ erred in the following ways: (A) by failing to evaluate all of her impairments, including her fibromyalgia; (B) by

improperly concluding she retained the RFC to perform a reduced range of light work activity[4]; (C) by improperly assessing her credibility; and (D) by failing to develop the record. (Doc. No. 10, Pages 1-18). In response, Defendant claims that the ALJ properly developed the record, properly assessed Plaintiff's mental impairments, properly discredited her subjective complaints, and properly assessed her RFC. (Doc. No. 11, Pages 1-15). This Court will address each of Plaintiff's arguments.

### A.    Fibromyalgia Evaluation

Plaintiff claims the ALJ failed to properly evaluate her fibromyalgia. (Doc. No. 10, Pages 1-10). In her briefing, the only evidence Plaintiff presents supporting her claim that she suffers from fibromyalgia is dated from 1994 through 1996, and this evidence was not included in the record. *See id.* The ALJ declined to include this evidence in the record because this information "predate[s] her onset by several years and contain[s] no information about the period adjudicated in the decision." (Tr. 10). Plaintiff claims these records should have been included as a part of the transcript. (Doc. No. 10, Pages 1-10). Plaintiff claims these records are significant because they "corroborate" her testimony regarding back pain and fibromyalgia. *See id.*

Having reviewed Plaintiff's argument, this Court cannot find that the ALJ erred by refusing to admit these records. As an initial matter, these records are dated from 1994 through 1996, nearly ten years before Plaintiff's alleged onset date of November 4, 2005. (Tr. 42). Under the Act, the ALJ is only required to develop the record for a one-year period, and that year begins after the claimant's alleged onset date. *See* 42 U.S.C. § 423(d)(5)(B) (the ALJ "shall develop a complete

---

[4] In her brief, Plaintiff actually splits this issue into two issues: whether the ALJ properly evaluated her mental impairment(s) in accordance with 20 C.F.R. § 416.920a and whether the ALJ properly evaluated her RFC. (Doc. No. 10, Pages 1-18). Because these arguments are the same, this Court will address them at the same time. The only other argument Plaintiff raises with the ALJ's RFC determination relates to whether the ALJ actually made an RFC *finding*. (Doc. No. 10, Page 16). Plaintiff claims the ALJ did not make an RFC finding. *See id.* The ALJ's RFC finding is based upon the hypothetical provided to the VE (as noted above). (Tr. 15, 318). Therefore, this argument is entirely meritless.

6

medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability"). *See Pirtle v. Astrue,* 479 F.3d 931, 934 (8th Cir. 2007) (recognizing the relevant time period begins on the alleged onset date).

Further, chronologically, the next set of medical records included in the transcript are from 2004, and they are dated nearly a decade later than these medical records. (Tr. 110-121). Finally, while some of the more recent medical records demonstrate that she suffered from some level of nonspecific physical pain (*e.g..,* Tr. 112) and back pain (*e.g.,* 184), none of the recent medical records Plaintiff has presented to this Court demonstrate that Plaintiff suffers from fibromyalgia or is suspected to suffer from fibromyalgia. Accordingly, this Court cannot find the ALJ erred by refusing to admit these medical records dating from 1994 until 1996.

**B.     RFC Determination**

Plaintiff claims the ALJ erred in assessing her RFC by failing to properly consider her mental impairments in accordance with 20 C.F.R. § 416.920a. (Doc. No. 10, Pages 10-15). Under this regulation, the ALJ is required to consider the degree of a claimant's mental impairment in four broad areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). After determining the claimant's limitations in those areas, the ALJ then determines whether those limitations meet the requirements of one of the Listings.[5] *See id.* § 416.920a(d). If they do not, the ALJ then applies those limitations while evaluating Plaintiff's RFC. *See id.*

Plaintiff argues that the ALJ did not properly consider her mental impairments pursuant to

---

[5] In her appeal brief, Plaintiff does not appear to claim that her alleged mental impairments meet the requirements of the Listings. (Doc. No. 10). Therefore, this Court will not address this issue further. *See Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005) (rejecting "out of hand" claimant's conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05C because he provided "no analysis of the relevant law or facts regarding these listings").

7

this regulation when he evaluated her RFC. (Doc. No. 10). Specifically, Plaintiff claims the ALJ improperly evaluated her limitations in these four broad areas of functioning. *See id.* In his opinion, the ALJ found Plaintiff had the following limitations in these four broad areas of functioning: (1) mild limitations in activities of daily living; (2) moderate limitations in social functioning; (3) mild limitations of concentration, persistence, and pace; and (4) no extended episodes of decompensation. (Tr. 13). Plaintiff claims that she suffers from more than "mild" limitations in her activities of daily living, more than a "moderate" limitation in social function, and more than a "mild" limitation in concentration, persistence, and pace. *See id.* at 10-11. Plaintiff also claims she has suffered from episodes of decompensation (each of an extended duration). *See id.* at 12. Plaintiff references her medical records and her testimony at the administrative hearing to support her claims.

    **(1)  Activities of Daily Living**

  This Court finds no error with the ALJ's evaluation of Plaintiff's mental impairments and finds that the transcript supports the ALJ's findings regarding these four broad areas of functioning. First, Plaintiff claims she suffers from more than a "mild" restriction in her activities of daily living. (Doc. No. 10, Pages 11-12). She claims that she lives with her mother, her mother takes care of her, and she and is unable to live alone. *See id.* She claims "her mother reminds her to take her medicine, and . . . cooks." *See id.*

  The transcript, however, does not support these claimed limitations in her activities of daily living. In her application for disability benefits, she reported she could "still take care" of herself. (Tr. 72). Dr. Rhonda Tannehill, Ph.D. reported during a consultative examination that Plaintiff's "ability to care for herself appeared to be within age limits," Plaintiff could complete personal hygiene tasks daily, and Plaintiff could drive and cook. (Tr. 208). This evidence provides substantial evidence supporting the ALJ's finding that Plaintiff only has a "mild" restriction in her

activities of daily living. Further, the mere fact that Plaintiff lives with her mother does not establish that she has a restriction in her activities of daily living. At the time of the administrative hearing on September 10, 2008, Plaintiff's mother was using a walker and had recently had both a stroke and open heart surgery. (Tr. 291-292). Plaintiff clearly was not receiving much assistance from her mother at that time.

### (2) Social Functioning

Plaintiff claims she suffers from more than a "moderate" limitation in social functioning. (Doc. No. 10, Pages 11-12). She claims she suffers from social isolation, auditory and visual hallucinations, poor social skills, impulsive behavior, and anxiety. *See id.* Plaintiff claims all of these problems produce more than a "moderate" limitation in her social functioning. *See id.* With this argument, Plaintiff is essentially claiming that both her anxiety and her mood disorder cause her to be more than moderately limited in social functioning. This Court will address both of these disorders.

First, Plaintiff has demonstrated she suffers from some level anxiety. (Tr. 110-127). Her medical records, however, indicate that her anxiety is well-controlled with medication when she is properly taking it. Throughout 2005 and 2006, Plaintiff received treatment for her anxiety disorder. (Tr. 110-127). On June 10, 2005, Plaintiff reported suffering from problems due to her "nerves" and was prescribed Lexapro.[6] (Tr. 118). Two weeks later, Plaintiff again reported the same symptoms and reported that her dosage of Lexapro was not sufficient.[7] (Tr. 116). Because this dosage was not working, the physician treating Plaintiff increased her dosage to 20 mg. *See id.*

---

[6]Plaintiff was actually diagnosed with depression. (Tr. 118). However, based upon Dr. Tannehill's findings (as outlined below) it appears her "nerves" could be better attributed to an anxiety disorder. (Tr. 199).

[7] Plaintiff reported feeling "the same" with a 10 mg of Lexapro. (Tr. 116).

9

Thereafter, on July 8, 2005, Plaintiff returned for a follow-up appointment on her anxiety and reported no problems with this increased dosage of Lexapro, and it appeared her symptoms were well-controlled. (Tr. 114). This was Plaintiff's last appointment for nearly one year. Thereafter, on April 6, 2006, Plaintiff was seen by a physician and again reported suffering from extreme anxiety. (Tr. 110). During this appointment, Plaintiff also reported she had stopped taking her Lexapro for one month which was "not good." *See id.* Plaintiff was put back on Lexapro which appears to have controlled her anxiety problems. *See id.* By August 1, 2007, Plaintiff reported she was "feeling fine." (Tr. 263).

Plaintiff cites the report of Dr. Rhonda Tannehill, Ph.D. to establish that she is disabled due to her anxiety disorder. (Tr. 206-221). Dr. Tannehill found Plaintiff suffered from Generalized Anxiety Disorder and was not expected to "improve in twelve months." (Tr. 209). This Court notes, however, that Dr. Tannehill's examination was conducted on May 22, 2006, only one month after Plaintiff had restarted Lexapro. *See id.* Further, Dr. Tannehill conducted a consultative examination and was not Plaintiff's treating physician. Therefore, her opinion is not entitled to the same weight as Plaintiff's treatment records. *See* 20 C.F.R. § 404.1527(d)(2).

As for her mood disorder, Plaintiff has cited several records claiming her mood disorder causes her more than a "moderate" limitation in social functioning. (Doc. No. 10, Pages 1-12). Specifically, Plaintiff cites the following transcript pages in her briefing: 110, 131, 128, 130, and 135-136.[8] These medical records are dated from 2005 and 2006. Plaintiff's more recent medical records do not reflect any such severe limitations. On February 22, 2007, Plaintiff was prescribed the antipsychotic Geodon. (Tr. 267). Thereafter, on May 1, 2007, Plaintiff was reported be "doing

---

[8] Plaintiff also cites pages of the transcript that include her disability application and the administrative hearing transcript. (*e.g.,* Tr. 78). Because these are not medical records, this Court will not address them further.

10

very well" psychologically on Geodon. (Tr. 265). Based upon Plaintiff's medical records, it appears Plaintiff suffered from problems with her teeth grinding after she took Geodon so this medication was discontinued, and Plaintiff began taking the antipsychotic Zyprexa. (Tr. 254). Plaintiff reported no problems with Zyprexa, and on April 10, 2008, reported she was "happy" on Zyprexa. *See id.* Based upon these findings, this Court finds no error with the ALJ's finding that Plaintiff only had a "moderate" limitation in social functioning due to her anxiety and mood disorder.

### (3) Concentration, Persistence, and Pace

Plaintiff claims she suffers from more than a "mild" restriction in her ability to maintain concentration, persistence, and pace. (Doc. No. 10, Pages 12-15). Plaintiff generically cites "records from Therapeutic Family Services, Community Counseling, and Charitable Christian Medical Clinic" in support of her claim that she suffers from more than a "mild" restriction. *See id.* Plaintiff does not provide any specific evidence supporting her claim, and, as outlined above, this Court has already reviewed those medical records and finds no evidence supporting more than a "mild" restriction in this area of functioning. Further, in Dr. Tannehill's consultative report, she finds Plaintiff has no limitation in this area. (Tr. 208). Therefore, based upon this review, this Court finds no error with the ALJ's determination in this area of functioning.

### (4) Episodes of Decompensation

Plaintiff claims her "episodes of decompensation, each of an extended duration" have come from her inability to be around people. (Doc. No. 10, Pages 12-13). Plaintiff cites no specific *episodes* but, instead, claims her attempts at maintaining employment and failures satisfy this requirement. This briefing is not specific enough for this Court to ascertain Plaintiff's argument or to surmise to which "episodes" Plaintiff is referring. Thus, this Court dismisses that argument "out

of hand." *See Vandenboom,* 421 F.3d at 750.

### D. Credibility Determination

Plaintiff claims the ALJ erred in assessing her credibility. (Doc. No. 10, Page 17). In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.[9] *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322.

The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *See id.* The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility

---

[9] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, this Court finds the ALJ fully complied with *Polaski*. The ALJ not only specifically referenced the *Polaski* factors in his opinion, but he also examined most of those factors. (Tr. 13-14). The ALJ then determined Plaintiff was not credible based upon the following findings: (1) Plaintiff was noncompliant with her medication and treatment; (2) Plaintiff was not honest to her physicians about her use of alcohol; and (3) Plaintiff had a poor earnings record and only had SGA from 1993 until 1994 and 2003 until 2004 which indicated a lack of motivation to work. (Tr. 14). Based upon these findings, he determined Plaintiff's subjective complaints were not credible to the extent she alleged. (Tr. 16, Finding 5). This Court finds this determination is sufficient and is entitled to deference. *See Goff v. Barnhart,* 421 F.3d 785, 792-93 (8th Cir. 2005) (holding an ALJ's credibility determination is entitled to deference if it is based upon "good cause" and based upon inconsistencies in the record as a whole).

      **E.**     **ALJ's Development of the Record**

Plaintiff appears to also claim the ALJ failed to fully and fairly develop the record by failing to order x-rays and a consultative physical examination. (Doc. No. 10, Page 10). The only evidence, however, Plaintiff submitted supporting her claim that she suffers from a disabling physical impairment such as back pain is dated from 2005 and 2006. (Tr. 112, 114, 184). This was around

13

the time she was involved in a motor vehicle accident. (Tr. 184). Plaintiff's more recent medical records do not reflect that suffered from any disabling physical impairment. (Tr. 252-270).

Further, on January 23, 207, she reported suffering from back pain and was directed to undergo physical therapy. (Tr. 271). There is, however, no record included in the transcript which indicates she sought this physical therapy. Plaintiff's failure to seek follow-up treatment undermines her subjective complaints of pain. *See Shannon v. Chater,* 54 F.3d 484, 487 (8th Cir. 1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability"). Accordingly, this Court cannot find that the ALJ was required to order a consultative physical examination in order to fully assess Plaintiff's physical impairments.

## 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 10th day of April, 2010.**

                                                        s/ Barry A. Bryant
                                                        HON. BARRY A. BRYANT
                                                        U. S. MAGISTRATE JUDGE